In the matter of the petition of CARMEN ESCANILLA DE RO-DRIGUEZ VIDA, for the assignment of Dower in the Estate of F. R. VIDA, deceased.

Held, that the widow was entitled to dower in a lease-hold estate, two hundred and seventy-seven years of the term remaining unexpired.

This is a petition for an assignment of Dower in the estate of F. R. Vida, deceased, under the following facts:

The deceased came to his death in September last, leaving a valuable leasehold estate in Honolulu, for the term of two hundred and ninety-nine years, two hundred and seventy-seven of which remain unexpired. In this estate, the petitioner, widow of the deceased, claims her dower; and it being encumbered by several mortgages, to which the widow is not a party, the mortgagees step forward and deny the right of her claim, on the ground that the estate being nothing more than a leasehold, is but a chattel real, and consequently belongs to the personality, in which she is entitled to no dower until after payment of the debts.

The statute governing this case reads as follows: "The wife shall in virtue of her marriage, be entitled in law to receive upon the death of her husband, by way of dower, a life estate in one-third part of all immoveable and fixed property owned by him at the time of her intermarriage, or acquired by him during her marriage; and an absolute property in the one-third part of all his moveable effects in possession, or reducible to possession at the time of his death, after the payment of all his just debts."

Now the question arises as to what is the proper construction to be given to the phrase "immoveable and fixed property,"—the one side arguing that it includes leasehold estates for a term of years, while the other contends that it only covers lands held in fee-simple, or by other freehold tenure. By the common law of England, a widow is not dowable in leasehold estates for terms of years, for they are con-

sidered as chattels belonging to the personal assets; but this doctrine of the common law has not been adopted in this kingdom, and consequently cannot be used as a guide in arriving at the proper construction to be given to our statute. We understand "immoveable and fixed property," as here used, to mean lands and tenements, in contradistinction to money, goods, wares, furniture, or any other species of moveable property, not fixed, without necessarily implying that such lands and tenements must be held in fee simple or by any other freehold tenure. The distinction drawn by the common law between real and personal property, or moveables or immoveables, in which all chattels real, as for instance leases for years, are classed with moveables, and yet said to be of a fixed nature, partaking both of the reality and personality, is to our mind a technical one, based less on principle than custom, and one which had its origin in an age when leases for years were of short duration, and under the power of the tenant of the freehold to destroy. It was owing to their brevity and uncertainty that they were originally considered of so little regard as to be classed as chattels or moveables. Nor is this to be wondered at, when we remember that in the early periods of English history, a landlord could at his will extinguish all leases for years upon his grounds, by suffering a common recovery. To seek for light in the subtle distinctions of the common law relating to real property, by which to interpret our statutes, would lead us into confusion and difficulties inextricable. The question is, not what meaning the common law attaches to "immoveable and fixed property," but what meaning did the Hawaiian legislature, which passed the statute, attach to this phrase? At the time of enacting this statute, there was no such thing known as a title in fee simple, the Chiefs themselves holding their lands under the King, and the very leasehold in question being considered one of the most durable and valuable titles, then in existence. Nearly all the lands possessed by foreigners were held under leases for years, or at the will of the King, or some Chief, and in common parlance, real estate, or fixed and immoveable property was understood to mean any interest whatever in lands. The Hawaiian legislators of that day knew nothing of the common law distinctions respecting real estate, and beyond doubt included leases for years, the then prevailing, if not the best, title, under the head of immoveable property. Their language is, that the widow shall have a life estate in the one-third part of all his "waiwai paa," which we understand to mean his fixed property—his interest in lands and tenements, held by any tenure whatsoever; and it seems to us it would be doing violence to common reason, were we to say, that in the state of titles then existing, they intended to exclude from dower leases for years, especially when running for a long term like the one under consideration. But to go back still further, if any thing more is necessary, let us see what was the view of the framer of this statute respecting dower in leasehold estates. Attorney-General Ricord, in his opinion delivered in the case of the widow of William C. Little, in June, 1844, two years before the enacting of the statute, says, "The third part of the real property goes to the widow as a mere life estate, and the third part of the personal property goes to her absolutely. But she may in writing commute her dower by accepting it all in land by way of a life estate, taking more in amount, or by per-

sonal property absolutely, by taking less in amount. This is on the supposition of a fee simple, but if the deceased only died, seized of a leasehold estate for a term of years, the dower may be for a life estate in the leasehold, if the lease is for a long time, that is for a term longer than the natural life of the widow, but if not, of course the term of the lease would not be altered by the assignment of dower, but would expire by its own limitation, &c." In the Hawaiian Islands, we think it clear, that a long lease like the one under consideration, should be viewed as real estate, at least so far as the widow's dower is concerned, and in some of the United States provision is made by statute for the widow's dower in such cases. In Massachusetts, estates for years, where the term is limited for a hundred years or more, so long as fifty years of the same remain unexpired, is regarded as an estate in fee simple, for certain purposes, and the widow is entitled to dower therein. (Mass. Rev. St., 411, Sec. 18.) In Missouri she is entitled to dower in leaseholds for more than twenty years. (Miss. St. 221.) In Ohio, dower is given not only in all lands whereof the husband was seized as an estate of inheritance during the coverture, but in all his right, title or interest at the time of his death, in lands and tenements held by bond, article, lease or other evidence or claim. (Chase's Statutes of Ohio, Vol. 11, 1314; 4 Kent's Comm., p. 47, note 6.) A long lease in modern times, says Chancellor Kent, (4 Kent's Comm., 86) has been considered a muniment of title and equivalent, in some respects, to an estate in fee, (Lord Mansfield in the case of Denn vs. Barnard, Cowp. Rep. 597,) said: "No man held a lease of 2,000 years as a lease, but as a term to attend the inheritance. Half the titles in the kingdom were so."

The case of Brickwood vs. Pelly, decided in this court in 1848, forms no objection to the right of dower in this case; for there the right of dower arose before the statute was passed, and the point raised as to whether the estate which was said to be held at the will of the King, was realty or not, was passed over by the court, but finally treated as personalty, on grounds peculiar to that case.

There is no question but the widow would be entitled to dower in an estate for life, under the statute, and we think it the plain intention of the legislature that she should be equally entitled to it in an estate for a long term of years, which, in these islands, is a greater estate than for life. "It is said there be three things favored in law—life, liberty and dower; that dower is a legal, an equitable, and a moral light, favored in a high degree by law, and next to life and liberty, held sacred." (Co. Lit. 124, 6; Kennedy vs. Nedrow, 1 Dall. 417; 1 Hilliard's Real Property, 127.) We adopt this just and humane principle of the common law to its fullest extent, and decide that the widow, not having been a party to the conveyances of this estate, is entitled to dower therein.

Mr. Montgomery and Mr. Bates, for petitioner.
Mr. Harris, contra.